### Hiram D. Freeman *vs.* City of Boston.

The mayor and aldermen of the city of Boston passed an order, " that a reward of $ 500 be offered to any person who shall give information, so that any person shall be convicted of setting fire to any building; for the purpose of burning the same : " An advertisement was inserted in the city newspapers which were published on the next morning after said order was passed, reciting that sundry houses and other buildings had been recently set on fire, and offering a reward of $ 500 to any person " who shall give information, so that any perpetrator of these outrages shall be convicted : " This advertisement purported to be " by order of the mayor and aldermen," and was signed by the city clerk.

*Held,* that the advertisement must be taken to be the official act of the mayor and aldermen. *Held also,* that the order and the advertisement were to be construed together, as parts of the same transaction, and that by the true construction thereof, the reward was offered for information that would lead to the conviction of offences previously committed, and not offences thereafter committed.

Assumpsit to recover a reward offered by the defendants. At the trial in the court of common pleas, before *Strong*, J. the plaintiff gave in evidence the vote of the mayor and board of aldermen of the city of Boston, and the advertisement, signed by the city clerk, which are hereinafter set forth in the opinion of the court. He also introduced evidence that the city clerk, by order of the mayor and aldermen, caused said advertisement to be published in the Boston Courier, and Boston Daily Advertiser, (two newspapers in Boston,) on the 20th of October 1835 ; also that a dwellinghouse was set on fire, in Boston, on the night of the 22d of the same October ; that the plaintiff gave the first information that Stephen Russell and Simeon L. Crockett set said fire, and pointed them out to be arrested by the proper authorities ; that said Russell and Crockett were arrested and brought to trial for said offence ; that the plaintiff was a witness, and

gave important testimony, at said trial; and that, in consequence of said information and testimony, given by the plaintiff, said Russell and Crockett were convicted of said offence.

Upon this evidence, the judge ruled that the defendants' offer of a reward related only to the previous fires referred to in the advertisement : Whereupon the plaintiff was nonsuit, but alleged exceptions to said ruling.

*Wellington*, for the plaintiff.

*Hopkinson*, for the defendants.

SHAW, C. J. This is an action of assumpsit against the city of Boston, to recover a reward of $ 500, for giving information of persons who had been guilty of setting fire to dwellinghouses. The plaintiff claims this, on the ground, that after the offer of a reward by the mayor and aldermen, in the manner hereinafter stated, he gave such information as to lead to the detection, trial and conviction of one Russell and one Crockett.

The principle, on which the action is brought, is now well settled. It is this : The offer of a reward or compensation, either to a particular person or class of persons, or to any and all persons, is a conditional promise ; and if any one to whom such offer is made shall perform the service, before the offer is revoked, such performance is a good consideration, and the offer becomes a legal and binding contract. Of course, until the performance, the offer of a reward is a proposal merely, and not a contract, and therefore may be revoked at the pleasure of him who made it. A leading case, on the subject of an action on the offer of a reward by public advertisement, is *Symmes* v. *Frazier*, 6 Mass. 344. But as it is entirely optional with the person offering a reward, to do it on such terms as he pleases, and as the contract depends wholly upon the offer on one side and the performance on the other, without other communication between the parties, the legal import and effect of the contract must be determined by the terms of the offer, fairly construed according to the intent of the party making it. In the case cited, it was held that an offer of a specific reward, for the recovery of a certain sum of money lost, ought, unless specially limited, to be construed to be an offer of a

proportional part of the reward, for the recovery of a part of the money lost.

In the present case, the plaintiff relies upon two documents, as evidence of the offer of a reward, on the part of the city; and as there is some supposed difference in their terms, it becomes necessary to consider them both, and compare them. On the 19th of October 1835, the mayor and aldermen passed a vote to the following effect:  " At a meeting of the board of aldermen, it was ordered, that a reward of $500 be offered to any person or persons, who shall give information, so that any person shall be convicted of setting fire to any building, for the purpose of burning the same."

It was further proved, that on the morning of the next day, October 20th 1835, by direction of the mayor and aldermen, an advertisement was published in several of the Boston papers, to the following effect:  " Whereas sundry houses and other buildings have been recently set on fire, by some evil minded person or persons, thereby destroying the property and endangering the lives of the inhabitants of this city, therefore, in pursuance of a vote of the mayor and aldermen, a reward of five hundred dollars is hereby offered to any person or persons, who shall give information so that any perpetrator of these outrages against the persons and property of the community shall be convicted.   By order of the mayor and aldermen.   S. F. McCleary, city clerk."

The incendiary act, of which the plaintiff gave information, occurred on the night of the 22d of October, a short time after the vote and advertisement offering a reward.

The question is, whether this offer extends to information to be given, in relation to incendiary acts to be perpetrated in future, after the reward offered, or whether it was limited to acts then past, the detection and punishment of which were contemplated by the offer.   The plaintiff contends, that the vote itself, independently of the advertisement, constituted the offer of a reward ; that as the votes and proceedings of the board of aldermen, acting in their official capacity, are by the charter to be public, every person may be considered as cog-

nizant of their acts, when passed and recorded, without further publicity ; that the plaintiff has a right to rely on the vote thus passed, without reference to the advertisement ; and that by this vote there is no limit to the offer, confining it to information of past acts, rather than future ones. On the part of the defendants, it is insisted, that the vote and the advertisement are to be considered and construed together ; that the preamble to the advertisement, having recited several incendiary acts then recently committed, and the reward offered being for information leading to the detection of any perpetrator of " these outrages," limits such offer to past acts ; and that it would be alike contrary to the terms of the offer, and to the dictates of sound public policy, to construe it as the standing offer of a large reward for the detection of a class of crimes to be afterwards committed, without limit of time.

The court are strongly inclined to the opinion, that an act of the board of aldermen, duly made and recorded, may be considered as a complete and definitive act, when it is intended so to be ; and that the publicity of their proceedings would be regarded as constructive notice to those concerned, when such notice would suffice. But there are two considerations here, which induce us to believe, that the vote ought not to be regarded as an independent offer, distinct from the advertisement. The first is, that the vote itself does not purport to be a definitive act, but contemplates that something further was to be done. It does not state that a reward is hereby offered, but that a reward " be offered," that is, as we understand it, be notified and presented to the public, to any and all persons, by some suitable and authentic announcement, to be published. The other consideration is, that the advertisement was simultaneous with the vote ; that it was equally the official act of the board of aldermen ; that the two manifestly relate to each other ; and by a well known rule of construction, they are to be taken as parts of the same transaction, and are to be construed together, in determining the quality of such transaction.

The vote was passed on the 19th of October, and the advertisement, being published in the morning papers of the 20th,

must have been sent on the day or evening previous ; which shows that the passing of the vote, and the signing of the advertisement by the city clerk, were on the same day. And this advertisement was the official act of the board of aldermen. It was argued, that the vote was an authority to the clerk, to issue the notice, and that the notice itself was the act of the clerk, executing such authority. One argument drawn from this view of the two documents was, that if there was any variance between the advertisement and the vote, it was without authority on the part of the clerk, that the vote alone must govern. But it does not purport to be the act of the clerk, nor is any authority conferred by the vote on the clerk, to do such act. It purports to be the official act of the board of aldermen, verified and authenticated by the signature of the clerk ; and when so verified, it must be taken to be their act.

Taking the vote and the advertisement together, with the recital, in the latter, of sundry houses and buildings having been recently set on fire, the court are of opinion, that the offer of a reward was confined to the detection of the perpetrators of these offences, which had been then recently committed. They were of a known character and degree of aggravation, as done in the night time, or otherwise, destroying or endangering dwellinghouses, or otherwise. Had the city government intended to make a standing offer of a reward for the detection of future incendiary acts — the policy of which, to say the least, would be very questionable — we think it would have been much more precise and guarded in its terms, and limited to some term of time. As an offer for the detection of future acts, it would, as it stands, be limited to no species of building, and to no time of day. The burning of a detached shop, of the value of $ 50 or $ 100 in the day time would be within its terms. Such, we think, was not the intent of the board of aldermen, nor was such the legal effect of their acts.

The court are therefore of opinion, that the plaintiff has not brought himself within the terms of the offer, by doing any act for which the reward was offered, and that his action cannot be maintained.

A doubt was suggested, whether the board of aldermen, by their general powers, or otherwise, had authority to bind the city by such an offer of a reward, for the detection of incendiaries; but this is a point which we have had no occasion to consider.

*Exceptions overruled.*